| | |
|---|---|
| FRANK LLP,<br><br>   *Plaintiff*,<br><br> v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>   *Defendant*. | Civil Action No. 16-cv-2105 (DLF) |

## **MEMORANDUM OPINION**

Since its inception in February 2016, this FOIA dispute has dwindled to a single issue: whether the Consumer Financial Protection Bureau appropriately withheld portions of two investigational hearing transcripts under 5 U.S.C. § 552(b)(7)(E). Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court will grant summary judgment in favor of the CFPB.

## I. BACKGROUND[1]

In February 2016, Frank LLP (Frank) submitted a FOIA request to the Consumer Financial Protection Bureau (CFPB) seeking documents related to the CFPB's enforcement action against—and eventual consent order with—Portfolio Recovery Associates (PRA). Lazier Decl. ¶ 5, Dkt. 16-3. Frank represents plaintiffs in a lawsuit against PRA and believes that "[r]ecords and information in the CFPB's possession that pertain to the CFPB's findings against PRA and its attorneys constitute evidence that would greatly strengthen the claims of the

---

[1] The facts here are recited in the light most favorable to Frank LLP, as they must be in considering the CFPB's motion for summary judgment. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

plaintiffs and putative class" in that lawsuit. Pl.'s Opp'n & Cross-Mot., Dkt. 20 at 3. After submitting its request, Frank entered into a series of back-and-forths with the CFPB that included various administrative denials, appeals, and—after Frank filed suit—productions. *See* Lazier Decl. ¶¶ 5–21, Dkt. 16-3 (describing the process). The final production included redacted versions of two investigational hearing transcripts from the CFPB's interviews of two PRA employees. *Id.* ¶ 21; *see also* Pl.'s Opp'n & Cross-Mot., Dkt. 20 at 7. The CFPB invoked exemption 7(E) as the basis for the redactions. Pl.'s Opp'n & Cross-Mot., Dkt. 20 at 7; *see also* 5 U.S.C. § 552(b)(7)(E).

In June 2017, the parties filed a joint status report indicating that they had "narrowed the known issues in this matter to redactions within [the] two transcripts." Dkt. 14 at 1. The Court ordered briefing, Dkt. 15, and the parties filed cross-motions for summary judgment, Dkts. 16, 20, 21. The case was reassigned to the undersigned judge on December 4, 2017.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA litigation, when a federal agency moves for summary judgment, all facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per

curiam) (quoting *Nat'l Cable Television Ass'n, Inc. v. F.C.C.*, 479 F.2d 183, 186 (D.C. Cir. 1973)). The agency must explain in reasonable detail why an exemption applies to any withheld records. *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 147 (D.C. Cir. 2006).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). That is in part because "[t]he peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry*, 684 F.2d at 126. Accordingly, "[i]n FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotations and alterations omitted). In the absence of evidence to the contrary, the agency's affidavit is presumed to have been submitted in good faith. *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Here, the CFPB has withheld portions of two investigational hearing transcripts and invoked exemption 7(E). That exemption allows agencies to withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). The parties dispute whether the withheld materials qualify under this exemption.

3

## III. ANALYSIS

Frank does not appear to dispute, and the Court has little trouble concluding, that the investigational hearing transcripts at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). An agency satisfies this requirement when it "establish[es] a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)). "[L]aw enforcement purposes" include both civil and criminal matters. *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002). As the CFPB notes, "the very fact that the two transcripts are responsive to Frank LLP's FOIA request demonstrates that the transcripts were compiled for law enforcement purposes" because Frank "sought documents that the Bureau 'relied upon' in making a specific finding of fact in the Bureau's consent order with PRA, which resolved an enforcement action against PRA." Def.'s Mot., Dkt. 16 at 8 (citing Lazier Decl. ¶ 5, Ex. A, Dkt. 16-3; Dkt. 1, Ex. C).

Frank's main argument is that "[t]he CFPB's methods in questioning PRA's professional affiants do not amount to 'techniques and procedures' for purposes of Exemption 7(E) withholding, because the CFPB could not have employed any interviewing methods that are particularly unknown to the public." Pl.'s Opp'n & Cross-Mot., Dkt. 20 at 9. But decisions from other judges of this court show that investigative questioning can qualify as such a "technique" or "procedure." In *Barouch v. United States Department of Justice*, the court allowed the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) to withhold portions of an ATF interview because ATF explained that the withheld information related to "questioning techniques used by the ATF agents and local law enforcement agents" and

4

disclosure of "how law enforcement agents and officers question suspects and the tactics they use could lead to criminals using maneuvers to circumvent the law enforcement measures." 87 F. Supp. 3d 10, 30 n.13 (D.D.C. 2015) (internal quotations omitted).[2] Releasing the information could have "permit[ted] individuals to prepare responses to counter these law enforcement strategies" and thereby "hinder[ed] future use of these tactics." *Id.* So too here: the redacted materials "contain the specific questions asked by Bureau investigators of two of PRA's affiants, including the specific information and types of information sought, the manner of questioning, the sequencing of questioning, and the manner and sequencing of follow-up questions on specific items of interest," and "[i]f entities were aware of this information, they could coach future witnesses in similar cases on how to avoid providing incriminating information, hindering the future use of these investigative techniques." Petersen Decl. ¶¶ 15, 18, Dkt. 16-2.[3]

Similarly, in *Rosenberg v. United States Department of Immigration & Customs Enforcement*, the court granted summary judgment to the FBI when it withheld a questionnaire

---

[2] Frank argues *Barouch* is "wholly inapposite" because the agency there won "only because" the requester failed to object to the withholding. Pl.'s Opp'n & Cross-Mot., Dkt. 20 at 12–13. But the *Barouch* court reached the merits, notwithstanding the plaintiff's failure to object:

> Plaintiff does not challenge defendants' withholdings based on FOIA Exemption 7(E), but the Court considers them anyway. . . . Although plaintiff has not specifically challenged this withholding, defendants have the burden to justify their reliance on any FOIA exemption, and neither defendants' pleadings nor the Boucher declaration addresses this withholding. Still, the Court finds that the explanation in the *Vaughn* Index provides a sufficient basis upon which to conclude that defendants have carried their burden to justify this particular withholding, especially in light of plaintiff's failure to object to it.

*Barouch*, 87 F. Supp. 3d at 29, 30 n.13 (internal citations omitted).

[3] The CFPB filed a redacted version of the Petersen declaration along with its motion for summary judgment. *See* Dkt. 16-2. The CFPB then moved for leave to file an unredacted version ex parte and in camera, Dkt. 17, and the judge previously assigned to this case granted that motion. The Court has since received and reviewed the unredacted declaration, which adds

prepared by an FBI special agent investigating allegations of obstruction of justice. 13 F. Supp. 3d 92, 113–14 (D.D.C. 2014). The questionnaire contained "specific questions, the rationale for a particular question, and recommendations to be followed by [Special Agents] conducting the interrogation." *Id.* at 113 (quoting FBI declaration). The Court concluded that the questionnaire was properly withheld under exemption 7(E) because "[r]elease of the redacted questions would disclose what the FBI deems relevant to investigating obstruction of justice cases," because "the redacted information includes the FBI's rationale for one particular question as well as recommendations of follow-up questions," and because the FBI "logically and reasonably explained how releasing what the FBI deems relevant to obstruction of justice investigations would allow criminals to 'adjust their responses and behavior to circumvent the law.'" *Id.* at 114 (quoting FBI declaration).

Frank attempts to distinguish *Rosenberg* on the ground that the questionnaire "disclosed questions that the agency <u>might have</u> asked" and thus provided "a meticulous blueprint covering <u>every possible</u> question-and-answer eventuality." Pl.'s Opp'n & Cross-Mot., Dkt. 20 at 12 (emphasis in original). But first, it is not clear which way that cuts—the fact that the transcripts here contain *actual* instead of *potential* questions may actually reveal more about what the CFPB ultimately considers important. And second, even assuming this fact cuts in Frank's favor, the difference is only in the quantity—not the quality—of information disclosed: even if only *some* rather than *all potential* avenues of CFPB investigative questioning are revealed, they still reveal "what the [CFPB] deems relevant to [Consumer Financial Protection Act and Fair Debt Collection Practices Act] investigations."

---

detail about the questions and information contained in the withheld materials. To avoid disclosing that information, the Court here quotes and cites only to unredacted portions of the initially filed declaration.

Frank cites an out-of-circuit case, *American Civil Liberties Union Foundation v. Department of Homeland Security*, for the proposition that "[a]sking well-known law-enforcement arrest questions in a particular order does not amount to a 'technique.'" 243 F. Supp. 3d 393, 404 (S.D.N.Y. 2017); Pl.'s Opp'n & Cross-Mot., Dkt. 20 at 10–11. But that case involved "routine questioning" that Customs and Border Protection used with "more than 500" children and that were "well known" through "filmed arrests," copies of interviews that had been made available to lawyers, and "the 57-episode Border Wars [television] series." *ACLUF*, 243 F. Supp. 3d at 404–05. The record here does not demonstrate that level of publication; to the contrary, the CFPB's declaration details the ways in which the CFPB keeps investigational hearing transcripts confidential. *See* Petersen Decl. ¶¶ 10–13, Dkt. 16-2.[4] Additionally, the *ACLUF* court expressly declined to adopt reasoning from this Court allowing withholding even for some well-known techniques.[5] At any rate, to the extent the *ACLUF* decision conflicts with

---

[4] Frank also argues that the CFPB "necessarily reveal[ed]" its questions to the PRA employees it interviewed "during the underlying investigation," that those employees "undoubtedly" shared the questions with their supervisors and "likely" shared them at industry group meetings, and that the questions are consequently widely known. Pl.'s Opp'n & Cross-Mot., Dkt. 20 at 15. But as the CFPB points out, that argument proves too much: if sharing interview questions during the interview itself automatically stripped the questions of exemption 7(E) protection, other cases in this court should have come out the other way. *See, e.g.*, *Barouch*, 87 F. Supp. 3d at 30 n.13 (exempting portions of "Interview of David Barouch"); *Piper v. U.S. Dep't of Justice*, 294 F. Supp. 2d 16, 30 (D.D.C. 2003) ("Releasing the questions and answers of FBI administered polygraph examinations has the potential to allow a cunning criminal to extrapolate a pattern or method to the FBI's questioning technique.").

[5] *Compare Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) ("[E]ven commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." (quoting *Judicial Watch, Inc. v. FBI*, 2001 WL 35612541, at *8 (Apr. 20, 2001))), *with ACLUF*, 243 F. Supp. 3d at 404 ("[T]he CBP . . . argu[es] that even 'generally known' techniques and procedures may be withheld if disclosure would nullify their effectiveness. . . . However, the Second Circuit has not adopted that exception.").

decisions in this circuit, the Court finds *Barouch* and *Rosenberg* more convincing and concludes that the questioning at issue qualifies as a "technique" or "procedure" under exemption 7(E).

The parties disagree about whether the CFPB must also demonstrate that "disclosure could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E), and offer competing statutory analyses. *Compare* Def.'s Mot., Dkt. 16 at 11–13, *with* Pl.'s Opp'n & Cross-Mot., Dkt. 20 at 13–14. But the Court need not reach this issue because the CFPB *has* shown such a risk of circumvention, whether it was required to or not. The bar is not high: "the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). So "[r]ather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194).

The CFPB has cleared this "relatively low bar." *Id.* The Petersen declaration avers that disclosure of the redacted portions of questioning would "provide a blueprint to other entities not yet under investigation, or currently under investigation, of the types of information the Bureau seeks in an [investigational hearing] to determine whether there have been violations of law, particularly with respect to the filing of affidavits in debt collection litigation," and that those entities could then "coach future witnesses in similar cases on how to avoid providing incriminating information, hindering the future use of these investigative techniques, and thus

8

lead to circumvention of the law." Petersen Decl. ¶ 18, Dkt. 16-2. The CFPB has also identified a risk that "knowing the type of information on which the Bureau relies, including documents, to establish violations for conduct similar to that of PRA increases the risk that other entities under the Bureau's supervision will create or not create specific documents, such as policies, procedures, or training materials just to avoid liability." Def.'s Reply, Dkt. 21 at 14 (citing Petersen Decl. ¶ 18). As in *Rosenberg*, the Court concludes that this is a "logical[] and reasonabl[e]" explanation of how disclosure would "allow criminals 'to adjust their responses and behavior to circumvent the law.'" *Rosenberg*, 13 F. Supp. 3d at 114 (quoting FBI declaration).

## CONCLUSION

For the foregoing reasons, the Court grants the CFPB's Motion for Summary Judgment and denies Frank's Cross-Motion for Summary Judgment. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

Date: September 4, 2018